**Affirmed and Majority and Dissenting Opinions filed August 28, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00248-CV

---

## IN THE MATTER OF THE GUARDIANSHIP OF MARK SCOTT CROFT

---

**On Appeal from the Probate Court No. 3**
**Harris County, Texas**
**Trial Court Cause No. 415,844**

---

## D I S S E N T I N G   O P I N I O N

Mark Scott Croft is ready to get his life back. He testified before a Texas probate judge that, if the guardianship of his estate were discharged, he would buy a home and start looking for a job.

The Florida court that originally established his guardianship agreed and discharged the Florida guardianship over his person.

The court-appointed psychiatrist agreed and, after an exhaustive examination and records review, including consultation with a neuropsychologist, opined that

Croft possesses the ability to manage his financial affairs. *See* Majority Op. at 7–11.

The court-appointed guardian ad litem agreed and filed a report concurring with the psychiatrist's opinion.

And yet, the probate judge concluded that Texas Estates Code section 1202.155(3) precluded him from granting Croft's application to close the Texas guardianship of his estate. That subsection requires the following finding: "(3) if the ward's incapacity resulted from a mental condition, that the ward's mental capacity is completely restored." Tex. Est. Code § 1202.155(3).

The trial judge determined that Croft could not manage his own estate because he suffers from Bipolar Disorder, migraines, and impaired memory and concentration, rendering his mental capacity as less than completely restored.

Apparently, the trial judge construed the statutory language as requiring that Croft's mental capacity be just as it was before the guardianship was established. This is an incorrect construction of the statute.

Unfortunately, none of us can restore our mental capacity to what it was ten years ago, with or without experiencing a traumatic event such as Croft suffered in March 2009. Our memory fades, our mood swings, and our filter loosens or dislodges completely. We, like Croft, have trouble multi-tasking. That does not mean, however, that we are substantially unable to manage our own financial affairs.

All that is required under section 1202.155 is a finding that Croft has completely regained his ability to "(A) provide food, clothing, or shelter for [himself]; (B) care for [his] own physical health; and (C) manage [his] own financial affairs." *See id*. § 1002.017 (2) (definition of incapacitated person). The Florida trial judge concluded that Croft has regained his ability under (A) and (B) and ordered him restored to full capacity over those matters. The trial judge should incorporate

2

those orders—thus, all he needed to determine in Texas was whether Croft had regained his ability to manage his own financial affairs.[1]

In this trial, everyone agreed that Croft has completely regained his ability to manage his own financial affairs, except the trial judge. Perhaps Croft would not manage things perfectly, but he could manage them competently. Factually insufficient evidence supports the trial judge's conclusion that Croft is substantially unable to do so ("#4 [Croft] remains incapacitated to manage his financial affairs."). Factually insufficient evidence supports the trial judge's finding ("11") that Croft admitted that his physical and mental conditions interfere with his ability to manage his financial affairs.[2] Indeed, Croft testified, "I feel very confident I can take [care] of my own affairs."

None of the evidence speaks to Croft's inability to manage his own financial affairs. Interestingly, the majority emphasizes a period of time when Croft was without medication and housing. However, the more reasonable inference from this episode is not that Croft cannot manage his financial affairs, but that his guardian in Texas cannot. Dr. Ray's report stated:

> Apparently, as he had a guardian, a budget had to be prepared and approved, and it kept not happening. . . . He ended up homeless, sleeping at the marina, showering in a gym and eating at soup kitchens. He was without his medications for 6-8 weeks; finally he went to the judge in Florida who threatened to 'put someone in jail' if it weren't straightened out. He says he at that time blamed the Guardian of his Estate but has come to realize that he didn't understand the influences and pressures on her. He has tried to make amends but she declines to

---

[1] Generally, under principles of comity, Texas courts should give effect to the judicial decisions of other states. *See, e.g., In re BP Oil Supply Co.*, 317 S.W.3d 915, 918 (Tex. App.—Houston [14th Dist.] 2010, orig. proc.).

[2] The majority did not identify any evidence from Croft's testimony to support this finding.

take his calls.[3]

The trial judge disregarded the expert opinion of Dr. Ray, whom he appointed and had the opportunity to examine. All the facts detailed by the trial judge and the evidence detailed by the majority were considered by Dr. Ray before reaching her expert conclusion that Croft is substantially able to manage his financial affairs. No one has argued, and the judge did not find, that Dr. Ray's opinion was unfounded or that she has not qualified to give her opinion. *See City of Keller v. Wilson*, 168 S.W.3d 802, 813 (Tex. 2005). While it is undeniable that an experienced probate judge often determines capacity, the assistance of a medical expert is important, if not crucial. *See Hunter v. Ford Motor Co.,* 305 S.W.3d 202, 208 (Tex. App.—Waco 2009, no pet.) ("Uncontroverted expert testimony may be regarded as conclusive if the nature of the subject matter requires the factfinder to be guided solely by the opinion of experts and the evidence is otherwise credible and free from contradictions and inconsistency.") (citing *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 338-339 (Tex. 1998)).

The trial judge got it wrong this time. Because the majority concludes otherwise, I respectfully dissent. Give Croft back his life—and his money.


/s/      Martha Hill Jamison
          Justice


Panel consists of Justices Boyce, Jamison, and Brown (Boyce, J., majority).

---

[3] In a similar vein, Dr. Boake's report stated that Croft "said he is in conflict with the guardian of the estate about managing his expenses and legal affairs."

4